UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 11-10213 |
| v. | ) Violations: |
| (1) ROBERT DICKERSON,<br>(2) DENNIS DEGRAZIA, and<br>(3) DAVID HEBERT | ) 18 U.S.C. § 371<br>) (Conspiracy to Defraud the<br>) United States) |
| Defendants | ) |

**INDICTMENT**

The Grand Jury, in and for the District of Massachusetts, charges that:

**COUNT ONE**
**(Conspiracy to Defraud the United States)**
**(Title 18, United States Code, Section 371)**

At times material to this indictment:

**I. The Defendants**

1. ROBERT DICKERSON ("DICKERSON") is the sole owner of Woodchucks Building and Home Center ("Woodchucks") located in Dorchester, MA. Woodchucks is a Disadvantaged Business Enterprise ("DBE") certified by the Massachusetts State Office of Minority and Women's Business Assistance ("SOMWBA"). Woodchucks is certified as a DBE for procurement services for building supplies and construction materials.

2. DENNIS DEGRAZIA ("DEGRAZIA") is a partial owner and co-founder of U.S. Window and Door Construction Co., Inc. ("USWD"). USWD specializes in sound insulation of residential homes

surrounding airports and received contracts to sound insulate homes surrounding Boston Logan International Airport ("Logan"). Prior to founding USWD and between 2004 and 2007, defendant DEGRAZIA worked for JK Scanlan Company as its Airport Noise Division manager. In that capacity, defendant DEGRAZIA bid on and received contracts performing sound insulation of residential homes surrounding Logan. Between 1986 and 2004, defendant DEGRAZIA founded and was the Chief Executive Officer of Standen Contracting Co. At Standen Contracting Co., defendant DEGRAZIA also performed sound insulation of residential homes surrounding Logan.

3. DAVID HEBERT ("HEBERT") is a partial owner and co-founder of USWD along with defendant DEGRAZIA. Prior to founding USWD and between 2004 and 2007, defendant HEBERT worked for JK Scanlan Company in the Airport Noise Division assisting defendant DEGRAZIA. Prior to working at JK Scanlan Company, defendant HEBERT worked with defendant DEGRAZIA at Standen Contracting Co. performing residential sound insulation of homes surrounding Logan.

## II. Other Relevant Entities

4. The Massachusetts Port Authority ("Massport") is an independent public authority of the Commonwealth of Massachusetts responsible for the development, promotion, and management of airports, the seaport, and other transportation infrastructure in

the Commonwealth of Massachusetts. Massport also administers the Residential Sound Insulation Program ("RSIP") which retrofits homes with sound insulating windows and doors in communities affected by Logan's operations. The RSIP program is funded with grants provided by the United States Department of Transportation ("USDOT").

5. USDOT awards billions of dollars each year to state and local agencies to finance transportation projects nationwide. Since 1983, statutes and regulations require USDOT to ensure that at least ten (10%) percent of the funds authorized for highway construction and mass transit projects be expended with DBEs. The purpose of this requirement is to ensure that small disadvantaged business enterprises get a fair share of federally-funded highway and transit projects

**III. <u>The USDOT DBE Program</u>**

6. The USDOT DBE program is implemented by the state and local agencies receiving the federal funds, under the rules and guidelines set out in the Code of Federal Regulations (Title 49, Part 26) ("the regulations"). The recipients of USDOT funds are required to establish DBE programs in conformance with the regulations as a condition of receiving the funds. Massport receives USDOT funds and carries out USDOT's DBE program in the Commonwealth of Massachusetts by administering DBE programs in conformity with the regulations. As part of these DBE programs,

Massport relies upon the certification of SOMWBA to determine the eligibility of DBE firms to participate in federally assisted RSIP contracts and also establish contract specific DBE goals for each federally assisted RSIP contract. Massport requires general contractors to show that they can meet these contract specific DBE goals before it awards the contract to the general contractor. Generally, a general contractor that is not a DBE itself attempts to meet those goals by certifying that it will award subcontracts to an eligible DBE.

7. In order for a business to be certified as a DBE, a person must own 51% or more of a small business, establish they are disadvantaged within the meaning of the regulations, prove they control the business, and prove that the business is independent and has sufficient resources and employees to fulfill its contracts. Black Americans are presumed to be disadvantaged.

8. In conformity with the regulations, Massport's DBE programs only allow the work actually performed by the DBE to count toward the general contractor's designated DBE goal. Only funds paid to a DBE that performs a "commercially useful function" in the execution of a contract, qualify toward meeting these DBE goals.

9. A DBE performs a "commercially useful function" when it is responsible for execution of the work of the contract and is carrying out its responsibilities by actually performing,

managing, and supervising the work involved. To perform a "commercially useful function" the DBE must be responsible with respect to materials and supplies used on the contract, for negotiating price, determining quality and quantity, ordering the material, and installing and paying for the material itself.

10. A DBE does not perform a "commercially useful function" if its role is limited to that of an extra-participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation.

## IV. Statutory Allegations

11. From on or about September 1999 until on or about November 2009, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, the defendants,

**ROBERT DICKERSON,**
**DENNIS DEGRAZIA, and**
**DAVID HEBERT,**

and other persons and entities known and unknown to the Grand Jury did knowingly and willfully combine, conspire, confederate, and agree together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful governmental function of the USDOT in the implementation, execution, and administration of its DBE program.

## V. Manner and Means

12. It was the purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by

fraudulently using Woodchucks as a DBE on Massport RSIP contracts knowing that Woodchucks would not perform any work on those contracts. USWD counted Woodchucks toward its DBE goal, thereby undermining the DBE program and withholding work slotted for legitimate DBEs.

13. It was part of the conspiracy that the defendants DEGRAZIA and HEBERT would bid to perform RSIP contracts advertised by Massport. As part of the bid documents, the defendants would state that defendant DICKERSON doing business as Woodchucks was a supplier eligible to receive credit toward the contract's stated DBE goal by supplying windows and doors.

14. It was further part of the conspiracy that the defendants knew that defendant DICKERSON would merely be a "pass through," where funds and other paperwork would be passed to defendant DICKERSON to give the appearance of participation in the contract, when in fact, defendant DICKERSON did no work.

15. It was further part of the conspiracy that defendants DEGRAZIA and HEBERT and personnel working at their direction would negotiate, coordinate, manage, and install all windows and doors supplied on the RSIP contracts without the involvement of defendant DICKERSON.

16. It was further part of the conspiracy that defendants DEGRAZIA and HEBERT would cause payment to be made to defendant DICKERSON of a "fee" for the use of defendant DICKERSON's

company, Woodchucks, as a DBE on the RSIP contracts. The "fee" was a small percentage, usually 3 to 4 percent of the material costs attributed to defendant DICKERSON, and not based on any commercially useful function performed by defendant DICKERSON.

17. It was further part of the conspiracy that the defendants fraudulently induced the award of RSIP contracts to companies owned or run by defendants DEGRAZIA and HEBERT by claiming that and creating the illusion that defendant DICKERSON's company, Woodchucks, was performing a commercially useful function on its DBE subcontracts when, in fact, defendant DICKERSON's company did not perform a commercially useful function.

18. It was further part of the conspiracy that the defendants attempted to conceal the fact that defendant DICKERSON's company was not performing any commercially useful function by making false statements and representations to Massport.

## VI. Overt Acts

In furtherance of the conspiracy and to accomplish its objectives, the following overt acts, among others, were committed by defendants in the District of Massachusetts, and elsewhere:

19. On or about April 18, 2008, the defendants DICKERSON and HEBERT signed and submitted to Massport a "Letter of Intent,"

which stated that defendant DICKERSON's company, Woodchucks, would provide windows and doors on an RSIP contract as a DBE supplier when, in fact, the defendants knew that defendant DICKERSON was simply listed as a DBE supplier to give the false appearance of DBE participation and that Woodchucks would not provide any such materials or goods.

20. On or about December 1, 2008, the defendants DICKERSON and HEBERT signed and submitted to Massport a "Letter of Intent," which stated that defendant DICKERSON's company, Woodchucks, would provide windows and doors on a RSIP contract as a DBE supplier when, in fact, the defendants knew that defendant DICKERSON was simply listed as a DBE supplier to give the false appearance of DBE participation and that Woodchucks would not provide any such materials or goods.

21. Defendant HEBERT received invoices for payment from the manufacturer of the windows and doors that were supposed to be purchased by defendant DICKERSON. Defendant HEBERT altered the invoices to give the appearance that the manufacturer was billing Woodchucks when, in fact, USWD was the purchaser of the windows and doors, not Woodchucks.

22. Defendants DEGRAZIA and HEBERT ordered all windows and doors from the manufacturer without participation for defendant DICKERSON. After a final price was quoted from the manufacturer, defendants agreed on a small "fee" or "mark-up" to pay defendant

DICKERSON to allow defendant DICKERSON's company Woodchucks to be used as a DBE on the contract. After negotiating the "fee," defendants DEGRAZIA and HEBERT caused checks to be delivered to defendant DICKERSON despite the fact that defendant DICKERSON did not perform any commercially useful function.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL,

FOREPERSON OF THE GRAND JURY

JEFFREY M. COHEN
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS May 31, 2011

Returned into the District Court by the Grand Jurors and filed.

5/31/11 @ 11:35AM
Deputy Clerk